Morning everybody. We're here to hear argument in Oberdorf v. Amazon.Com Pallet number 18-1041. May it please the court. My name is David Wilk. I'm here on behalf of Heather and Michael Oberdorf today. We bring two issues. Oh, I'd like to reserve five minutes for rebuttal. We bring two issues before you for consideration. The first is whether Amazon should be considered a seller under Pennsylvania's strict products liability law. I think valuable use of my time in that regard is to go over in some detail the nature of the transaction that gave rise to this cause of action as well as the nature of the relationship between Amazon and the third-party seller. My client, Mrs. Oberdorf, purchased the dog collar at issue upon visiting Amazon.com and being directed through the Amazon search feature to this particular collar and third-party seller. As in all the transactions on the marketplace, Amazon collects fees from both the buyers and sellers of the products and distributes payment to the third-party sellers at the deduction of its fee. It's our position that Amazon controls the sale processes in its entirety. Amazon controls the terms by which sales are to take place as well as the content format of all products placed on its marketplace website. My client made payment directly to the Amazon for the dog collar and received the receipt from Amazon for the purchase of that collar. I would also note, just as an aside, there has been no contrary evidence, but that the fact is that this dog collar is defective. The district court concluded that all that conduct was like the auction house. How is it different? Okay, I think it's distinguishable from that auction house case in that one, in the auction house case, I believe the court indicated that where the auction house was just connected to that dealer for a single moment or period of time, they were not going to extend seller status. Unlike that auction house case, Amazon has ongoing and continuing relationships with these sellers on its marketplace. In fact, the third-party seller in this case had an ongoing relationship with Amazon for some period of time before my client ever purchased a dog collar. There are many auction houses that have an ongoing relationship with certain customers. Are you saying that the Pennsylvania Supreme Court ruling should be distinguished by the amount of contact there is between the seller and the purchaser, that it has to be a one-time seller or it has to be a variety of different types of goods that are being handled? I guess I would say to the court in response to that, that one, it seemed to me the court was focusing in on the limited number of contacts in that case, but also the terms by which the business services agreement that Amazon requires all of its sellers to abide to gives Amazon complete control and discretion over the terms or the information that's provided to the potential consumer. So unlike an auction house where they just simply identify the agreement, the seller, the owner of the product, sets a reserve price or however that goes on, Amazon is much more involved in one. But Amazon does not create the essential information describing the product. Amazon reserves it, that's true. The initial information is provided by the seller, but subsequent to that and in the business services agreement, it's replete with Amazon indicating that it retains rights and reserves control unto itself as to how that information is displayed, what information it uses in the display page that a consumer sees. So it reserves to itself, the third-party seller submits whatever information it wants, Amazon puts it into the form and the vice president of marketplace said as much. They've developed the information and they take that information and mold it to how they want it presented and viewed by the customer. But the seller determines the price and one of the reasons to hold, to fit someone into the definition of seller is if they assume the liability for the defect, they can raise their price to cover the cost. Here Amazon is not the one that sets the price, it's the seller who sets the price. Well, that's true. But Amazon sets the price that it recovers and receives on each sale and the vice president testifies that that percentage range between 7 and 15 percent on every sale. So Amazon is certainly in a position to spread the cost of compensating for defective products by charging more. Amazon holds hostage these sellers. This is the preeminent place to sell your goods on the Internet. So Amazon certainly is in a position to spread the cost associated with compensation for defective products by changing the terms of the agreement. Have any courts adopted your policy arguments here? No, I would say they have not. I think part of the reason is if you look at that auction house case that was decided, I believe, in 1989. I believe that the courts have been slow to react to the proliferation of Internet sales. Isn't the other issue that the Pennsylvania statute, the Pennsylvania law defines seller quite broadly? It does, it absolutely does. And in fact, I would say the auction house case stands as an exception to the general rule that entities within the chain of distribution are determined to be sellers. And certainly in this case, when Amazon exercises a control, Amazon directs my client. If you go on Amazon, my client goes on Amazon and punches in dog collar. Amazon, by however they, their, you know, algorithms, directs consumers to the products that they wanted to go. And some of those are Amazon sold directly and some of those are third-party. Amazon controls the terms. My client pays Amazon and gets a receipt from Amazon. I mean, it seems to me they're much more like a seller than they are than as an auctioneer. Or as the court below suggested, a newspaper classified ad. What kind of control over the manufacturing process or influence over the manufacturing process do they have? None. I mean, to a large extent, other than they can certainly impose conditions on the vendors to provide some type of assurance that the products meet basic functionality. Amazon is in a position to dictate market, you know, standards. Amazon's in a position to require sellers to carry liability insurance or have valid on record addresses for service and process, none of which they do now. Amazon's influence and ability to influence is limitless, I would suggest to the court. I'd like to hear about the Communications Decency Act before your time expires. Sure. I believe the original intent of that act was to prevent internet service providers from being held liable for defamatory or otherwise harmful content posted by third parties. It was enacted when the internet was in its infancy and the immunity specifically was a way to help foster the development of the internet. I believe that what we're doing here, what we're asking here, is not content in as much as it's a sale of a tangible product. The three-part test announced in Nemet, I think, is illustrative. You're talking about, you have two strict liability claims. One is defective product and one is failure to warn. Right. Your comment that you said we're talking about a product, I guess, goes to the defective product claim. How does this, the Communications Decency Act, not preclude the failure to warn claim when that is a content matter? I understand your distinction on the design defect. So, how do you get around, how does it apply to the failure to warn claim? Let me just be more clear. I would suggest to you that because Amazon reserves to itself and, in fact, does modify and use, edit the information that it's provided from the individual seller, they actually are a content provider. That they, the seller, it's not a newspaper classified section type of situation where they submit an ad, the newspaper runs it without editorial. Amazon is involved in the content to the extent that they take the information and put it in the form that they want to use. They are now making it their content. But isn't it just an editorial function, not a content generation? I would assume, I would think that would depend on each particular, what they do in each particular situation. I don't know. Let's look at the record that we have here. Is there anything in the record here that would tell us that Amazon created the content? No, and it would not tell us, I don't believe it would tell us, to what extent they modified the, you know, you know, modified the information provided by the third-party seller. And if you could, could you explain your negligence claims? What's your theory of negligence? Because I saw the cause of action that's written in the complaint, but can you tell me what is your theory of negligence? The district court says described your negligence claim as being based on Amazon's role in the sale and distribution of the product, and then it said specifically that constructed an advertisement and collected money. Is your negligence claim based upon their advertisement, or is it something more? No, it is not. The negligence claim is based on the fact, I suppose, that they did not do anything to vet the seller or vet the product to see if it was capable of being safely used. That's a duty of care that's found where? That's just a common law. Yeah, I would submit to you it's a common law. Good morning, and may it please the court. My name is Eric Miller, and I represent Amazon. The district court correctly granted Amazon's motion for summary judgment for two reasons, either one of which is a basis for affirming the judgment. The first is that Amazon was not a seller of this product under state law, and all of the plaintiff's state law claims are ultimately predicated on the idea that Amazon sold this product to the plaintiff. Second, of course, is the Communications Decency Act. Amazon is not liable on any theory that seeks to treat it as the publisher or speaker of information provided by a third party. The facts in Musser are different from the facts in this particular case, or these online marketplaces, are they not? There are certainly differences in the facts, but the principle is the same. Tell us why. So the principle in Musser is that Pennsylvania has adopted section 402A of the restatement, which extends liability to sellers, and the courts in Pennsylvania have interpreted seller broadly, but what Musser says is there are still some practical limits. And the limitation is that the definition of seller doesn't extend to people who merely are a means of marketing a product. So an auctioneer like Amazon is not, they're not the seller in the literal sense. To sell is to transfer title, and Amazon never had title to this product. It never possessed it or touched it. A lot of stores with brick buildings don't have title to what they're selling either. They're selling it on they aren't sellers under the Pennsylvania Act? Consignees are in a different position, and there are cases, I'm not aware of any specifically in Pennsylvania, but there are cases from other states that have extended product liability to consignees, but a consignment store actually has custody and possession of the product for some period of time. So that raises a... You're saying a seller has to have title or possession of the product, physical possession of the product. At the least. And of course an auctioneer does have possession of a product, albeit briefly. So that there's a brick-and-mortar store that does not keep any of its goods. It just has relationships with a lot of suppliers, and the customer walks in and goes into the brick-and-mortar store and says, please order me a package of widgets. They go get them. You're saying that brick-and-mortar store is not a seller. That's what Musser says. That's right. It's just a means of marketing the goods. Well, let's talk about what Amazon does do. It enters a contract with the supplier. It processes the orders. It transmits the order details from the customer to the recipient. It collects the payment. It then remits a portion of the money to the supplier, keeps its portion. It can withhold payment. It can suspend accounts. It can take a product off the market. It controls the communication between the supplier and the customer. It selects what can be sold. It requires that seller to have good standing, indemnity, insurance. This sounds no different than the sales agent who is a seller under Pennsylvania law. Explain to me how Amazon is different than a sales agent. Well, the sales agent that the court referred to in Musser is a sales agent for a particular manufacturer. And that's an important point because under Musser, in the discussion of the policy considerations governing the scope of liability, the court looked at the incentive and the ability of the auctioneer there to control the quality of the product. What they said was that the auctioneer has no relationship with the manufacturer. It can't control how the product is made. It can't insist on a particular design or inspect how it's made. And that's a key fact, and it's the same with Amazon. Amazon has a relationship with the seller, but it has no relationship with the manufacturer. Does it promote any of its, any of the items that it lists? I mean, it, I guess it depends on what you mean by promote. There's a sense in which it is promoting all of the items. I understand. I don't mean just because it's listed, it's promoting them. Does it hawk them? What about like Amazon Choice Bestseller? Those designations, aren't they like hawking or promoting? It's selecting a particular product to draw the customer's attention to. I think you could say that, but you could say the same about what an auctioneer does. An auctioneer doesn't just, doesn't generally just, you know, neutrally say, you know, here are a bunch of things that you could buy or not. He says, you know, this is, here's a, here's a car, very low mileage. It's a good car, like, we'll start the bidding at $1,000, and it tries to encourage people to buy it. What about Sotheby's? What about Christie's? They say, here is a Degas, and they're saying if that picture doesn't turn out really to be a Degas, they're in big trouble. They are, they are in presenting, and they're an auction house, in presenting a work of art for sale, they are saying that this is what we represent that it is, and if it turns out to be a fake, I think people are going to go after the auction house, which, which I think shows an additional participation in selecting the product to sell, knowing the product you're selling. I think, and you're, the, the answer you've given to your hypothetical is correct, Your Honor, but that's not a product liability claim. That would be liability for misrepresentations that the auctioneer is making. If the auctioneer says something about the product, and the thing that the auctioneer says is not true, then that, that would be a basis. Well, but, but, but what you are saying about the product, in ways, has a lot of bearing on product liability. You're saying that this is a, a dog leash that you can walk your dog, or a dog collar that, that you can walk your dog with, and implying that it's, it's a stand-up to the wear and tear that a dog will present when you're walking it. Well, this, I mean, this, I think, you know, highlights the, the, the CDA issue here, which is that, you know, Amazon did not say any of those things. The third-party seller said those things. All of the description of the, the name of the product, the price of the product, the description of the product that was presented, that, that a consumer would see on the website, that Mrs. Oberdorf saw, all of that content was provided by the third-party seller, not by Amazon. Assume that Amazon had a brick-and-mortar store, and it had available for consumption products it manufactures side-by-side, but with products that are supplied by the third-party seller, and the customer walks in, has exactly the same shopping experience, and the third-party seller product just gets sent to their house, as does the Amazon product. Is it your position that it would be a seller for the Amazon manufactured products, but not a seller for the third-party product, even though the customer is having the same experience, and the terms are the same in terms of the transaction itself? If, if in your hypothetical, the, the store is, as Amazon is, clearly indicating, here are some products sold by us, here are some products that we are marketing for third parties, then yes, under, under the reasoning of Musser, the store, in that case, would simply be... So they can absolve themselves of seller status, if so long as they say, this product is from a third party. Well, I mean, they're not just saying that, they're, they're saying that, and it's true, and what if it wasn't a product that was from a third party, that they decided to, to take it as a consignee? Right? So it's, it would be liable as a consignee, right? I, I, under, look, I think that's right. So your distinction is, as long as they don't touch it, or have control, direct control over it, they're not a seller. And that's right, and that's because what the court, what the Pennsylvania Supreme Court has looked to is, you know, the ability of the entity to have some control over, over the safety. The, the, the point of extending seller liability, or a principle point of it, is to incentivize parties to take care, to ensure that products are safe. And when you have a... Well, if they had a responsibility, because they, they risked being in seller status land, wouldn't that incentivize them to be sure that they can track down the suppliers of the product, make sure they're amenable to service, or there's some means to fine them, ensure that there is at least some minimal level of safety, which we know in the hoverboard cases, that's exactly what Amazon did, right? Amazon learned there was a problem, took it off their website. It was no longer available. Third-party product, am I right? Right. So there is, there is a method by which an internet seller, like Amazon, could be incentivized to take better care in all the products it's making available. Well, I, I think, you know, in some, there is a sense in which that is true, but there, but, you know, that is equally true of a lot of other marketplace facilitators, that the law does not deem to be sellers. And maybe one analogy that I think would be helpful is, you know, if you have a third-party seller that, imagine a third-party seller that doesn't want to use Amazon, instead of using Amazon, the most likely way that they would sell their products is by having their own website. They would get people to see their website by placing an advertisement on Google. So, you know, people doing a search, you know, they, they go to Google, they, they see the result and they follow it through to the third-party website and Google. But in your hypothetical, all Google's doing is being an advertiser. It's not facilitating the transaction. It's not doing any of the things I've run through in terms of what Amazon does under your hypothetical. Well, but, I mean, then, then you look at, you know, the credit card companies. In that hypothetical are, you know, a necessary part of the process, necessary part of the transaction by processing the payment. You know, the Postal Service has physical custody of the product and delivers it. There are a lot of entities that are part of the transaction, that facilitate the transaction, without which it would not take place, that, that could, in principle, you know, exercise some control or sort of inspect the products and see whether they're safe. But the courts have said, you know, there is some limit to how far we're going to extend liability. Isn't it possible for Amazon to say, well, this new responsibility is being thrust upon me. That's fine. I will simply increase my fee to the third-party seller and we will have a, an incentive for Amazon to make the products they sell safer without any undue cost to them, because they are going to pass it on to the original seller and to the purchaser. Sure, and the auctioneer in Musser could have raised its auction fees and passed that along and then the court said, you know, they are in a position to distribute the cost.  And I would suggest that, to say that Amazon must be the insurer of the products sold by millions of third-party sellers on its marketplace is, you know, a significant policy. But a department store, though, a department store is found liable as a seller and it's got all kinds of products that were made by all kinds of folks and it's, it's been thrust within the chain to be responsible. Why should Amazon be treated differently or any internet service provider be treated differently? Because the department store has a contractual relationship with the manufacturer of the products. Well, Amazon has a contractual relationship with the, with the third-party supplier. But, but, but that doesn't give them the ability to control the manufacturer in the direct way that... So, you've been to the first floor of a Macy's. It's got all kinds of cosmetic counters. Are you saying it's got control over what Clinique does and Lancome and all of the other service providers? How is that not exactly what Amazon does? Because, I mean, the Macy's actually, you know, is, is actually, first of all, Macy's is literally selling it to you. They have purchased it from somebody who purchased it from the manufacturer. There is a... You're back to physical, like, physical ability to tender the object from one point to another. Well, that's part of it. And also there is a chain of contracts that, you know, they bought it from someone who bought it from the manufacturer and they can, they can insist. Well, so can Amazon. I mean, Amazon is big enough, has so many contacts, so many sellers, so many manufacturers, that if they want to make sure that a product is safely manufactured, that they're going to present... Amazon has reached a magnitude of size that I think they could do it very easily. And the expense that is involved in that, they could pass on in the, in the price, in the fee they charged for the object that they're selling. That is a policy argument that the Pennsylvania court, you know, could adopt. It has not yet adopted that and, you know, it is our position that a federal court sitting in diversity shouldn't make that decision for the Pennsylvania courts. We accepted your view that as long as you're selling online and there's only third-party suppliers of goods, there's no more, no way, the only people who can be responsible in products liability is the third party. And then under your theory then, that would really just eradicate products liability law and all of the development it had to make sure that everyone in the chain is responsible for what gets put in the stream of commerce and to ultimate consumers. Isn't that what you, basically your theory would be? If everybody just deals online, it never has, it takes physical possession of anything. All those folks are liable and therefore the only one responsible ever is going to be that third-party supplier. Well, you can still sue the third party. You can't sue the people who facilitated the sale by promoting any more than... The development of the law that's gone on in terms of products liability to put things in the chain of distribution. You've just, because now that we live in an internet economy in some ways, that all that law no longer applies. Is that your theory? No, it fully applies to the chain of distribution from the manufacturer to the wholesaler to the retailer. It just doesn't apply as it has never applied to the advertisers and promoters and marketplace providers. One of the policies in this area is a seller should have enough influence or to be able to exercise control over the safe design and manufacture of a product. So other than perhaps raising the fees, what could Amazon do to influence the safety designs of these products that it sells? Or is this just an impracticable? There's very little that it could do because it is the responsibility of the third-party seller to choose the product, source the product, and control its manufacturer. Amazon doesn't do any of those things and is not in a position to do any of those things. This is a Pennsylvania law question. Should we certify to the Pennsylvania Supreme Court the issue of whether an online marketplace like Amazon is subject to the Pennsylvania definition of seller? The court in its discretion certainly, you know, could do that. Our view is that application of the principles of Musser resolves this case and it's not necessary, but that certainly is something that's available to the court. I see my time has expired and we ask that the question be affirmed. Thank you. Just briefly, I want to touch on a few points that came up during the court's discussion with counsel. I think as the court recognizes the idea that physical custody or possession of the product is an antiquated and unrealistic requirement given the vast majority of the manner in which consumer transactions take place nowadays. Your Honor asked what they could do to ensure a safer design. That's a difficult question and I indicated that previously. But what Amazon doesn't do is make any assurance that the third-party person, sellers of amenable or available suit require them to carry insurance to cover for this type of claim. So Amazon on the one hand controls various aspects and the terms of the sale, but then wants to step back on the other hand and say they had nothing to do with it. With respect to the Communications Decency Act and the immunity provided, I submit to you that the Ninth Circuit's statement, Fair Housing Council versus roommate, applies significantly when the court stated the internet is no longer a fragile new means of communication that could easily be smothered in the cradle by overzealous enforcement of laws and regulations applicable to brick-and-mortar businesses. Rather, it has become a dominant, perhaps a preeminent means through which commerce is conducted and its vast reach into the lives of millions is exactly why we must be careful not to exceed the scope of the immunity provided by Congress and thus give online businesses an unfair advantage over the real world counterparts, which must comply with the laws of general applicability. That opinion was issued in 2008. I would suggest to you it's even more true today than it is then. Can you clarify the issue to the Pennsylvania Supreme Court of whether a marketplace like Amazon is a seller under Pennsylvania law? Absolutely, that's certainly something that this court could do. I mean the court below was predicting what Pennsylvania courts would do. Obviously, we're asking you to pass upon that prediction. Ultimately, you know, the Pennsylvania Supreme Court will have to address the issue. I guess finally, I'd just say, you know, it's not a moral imperative that Amazon grow exponentially without consequence for the domination of the market that it has. There's many ways Amazon, and I believe the court has touched upon, can influence to make products safer. I think if the court below's ruling is permitted to stand on both issues, Amazon will be granted an unjust advantage. An advantage is not warranted or found in the law over brick and mortar stores. And we see the consequences of Amazon's market dominance already. This will only emphasize that further. Amazon is in a preeminent position to influence the quest for safer products being sold. If not Amazon, then who? I'd ask that you reverse the court below. Thank you. Thank you. I thank counsel for their well-briefed case and well-argued case. Very interesting issue, and we'll take the matter under advisement. Thank you.